Fremont-Smith, Thayer, J.
In its amended complaint, Bunker Hill seeks the following declarations: Homeowners Policy Form HO 00 03, Policy Number HMA 0726265, does not obligate Bunker Hill to indemnify the insured, defendant Falcone, and her son Cruz, for clean up costs associated with the oil spill at 67 Forest Street in Medford on April 16, 2003; and the policy does not obligate Bunker Hill to provide a defense for, and indemnity on behalf of, defendants Falcone for any claims by owners of neighboring properties for damages resulting from any migration of the oil spill off of the insured’s property.

FACTS

Pursuant to the summary judgment record, the undisputed material facts are as follows.
Defendant Falcone owns a two-family home at 67 Forest Street, where, in April 2003, she lived with her son Cruz. On April 16, 2003, RANCO, a fuel oil delivery company, delivered 115.5 gallons of fuel oil into an above-ground fuel oil tank in the basement at 67 Forest Street. The policy provides that Bunker Hill does not insure for loss caused by corrosion.[1] Cruz testified at deposition that the oil gushed out of the tank into the basement. Remo Scarfo, the president of RANCO, testified at deposition that, on April 16, 2003, he observed that the by-then empty fuel oil tank had corrosion holes on the bottom and that a pool of oil was on the basement floor.
The subject insurance policy also provides that the provision regarding indemnification and defense against claims does not apply to “ ‘property damage’ to property owned by the ‘insured.’ ” Shaun L. McKenna (a project manager for Aegis Engineering Services, Inc., which Bunker Hill hired to perform a subsurface investigation at 67 Forest Street) opines in his affidavit that the data does not indicate that fuel oil has migrated beyond the insured’s property limits and that the probability of an impact on adjacent properties is negligible. Paul Giddings, an environmental analyst with the Massachusetts Department of Environmental Protection, issued to Falcone a notice of responsibility letter dated May 2, 2003, pursuant to G.L.c. 21E and 310 CMR 40.0000. Based on review of a report by Aegis Engineering Services, Inc., Giddings similarly concluded that the release of fuel oil did not pose a threat of off-site migration.
Steve Hagarty, Bunker Hill’s claims manager, retained Edward Ilsley, of West Claims Services Corporation, an independent insurance adjusting company, to investigate the fuel oil release at 67 Forest Street. On April 17, 2003, Ilsley reviewed the subject insurance policy with Falcone. Bunker Hill admits that, between April 19 and April 28, 2003, Ilsley twice represented orally to Falcone and/or his attorney Joseph Spinale that the policy provided at least partial coverage for the oil spill.

LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party must affirmatively demonstrate that there is no genuine issue of material fact on each relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A “material” fact is one that might affect the outcome of the suit under the applicable law. Mulvihill v. The Top-Flight Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). “Genuine” means that the evidence would permit a reasonable fact finder to resolve the point in favor of the non-movant. Id.
If the moving party does not bear the burden of proof at trial, it must either: (1) submit affirmative evidence negating an essential element of the non-moving party’s claim; or (2) demonstrate that the non-moving party’s evidence is insufficient to establish its claim. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). The non-moving party may not defeat the motion for summary judgment by resting merely on the allegations and denials of its pleadings, but must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(e). The court will interpret all inferences in the light most favorable to the non-moving party. Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 438 (1995).

DISCUSSION

There is no genuine issue of fact that Section I of the subject policy, by its terms, excludes coverage for clean-up costs associated with the oil spill at 67 Forest Street in Medford on April 16, 2003. Section I provides that Bunker Hill does not insure for property damage caused by corrosion and defendants have provided no evidence to controvert the contention that corrosion caused the release.
*544 Ilsley’s oral representations regarding coverage do not create coverage because there is no evidence that Ilsley had real or apparent authority to accept coverage. The policy, moreover, requires that any change of a provision of the policy must be in writing to be valid.
The situation is thus similar to that in Providence Washington Indem. Co. v. Varella, 112 F.Sup. 732, 733-34 (D.Mass. 1953) (Ford, J.). There an investigator hired by the insurer assured the policyholder that coverage would be provided, where the policy actually provided none. The Court said:
Such actions or statements made by representatives of the company cannot be held to have changed the terms of the contract embodied in the policy. Defendants do not contend that either Hambly or McGrory had any actual authority to make such changes, but they do argue that their position as the representatives who actually dealt with Mrs. Varella on matters affecting the policy clothed them with apparent authority to do so. This contention must be rejected. One of the conditions included in the policy is the following:
Changes: Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by an authorized representative of the company.
In the face of this provision it cannot be held that any representative of plaintiff had authority, real or apparent, to change the written terms of the policy by oral statements or representations so as to increase the coverage beyond that provided in the original contract.
With respect to future claims for damage as a result of migration of the spill onto neighboring properties, however, the policy provides coverage. See Rubenstein v. Royal Ins. Co. of America, 44 Mass.App.Ct. 842, 854 (1998) (Owned property exclusion does not relieve insurer of liability where liability “is designed to remediate, to prevent, or to abate further migration of contaminants to the off-site property . . . This is the case even if the contaminating substances are [at present] solely on the insured’s land”). While, at present, the likelihood of migration of oil off of the insured property may be remote, this does not obviate coverage for any future underground migration of oil in the groundwater.

ORDER

Accordingly, after hearing and consideration of the parties’ written submissions, this Court ALLOWS Bunker Hill’s motion for summary judgment as to a declaration that Section I of the subject policy does not oblige Bunker Hill to indemnify Falcone and Cruz for clean-up costs associated with the oil release. The Court, however, DENIES Bunker Hill’s motion for summary judgment as to a declaration that Section II of the policy does not obligate Bunker Hill to provide a defense for, and indemnity on behalf of, Falcone and Cruz for future claims resulting from alleged migration of the oil spill to other properties.

“We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not, however, insure for loss: ... 2. Caused by: . . . e. (3) Smog, rust or corrosion, mold, wet or dry rot; ...”